UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAY ABBOTT, | ) |
| Plaintiff(s), | ) |
| vs. | ) Case No. 2:10CV32 JCH |
| MATTHEW W. OLLER, et al., | ) |
| Defendant(s). | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Christina McKee's Motion to Dismiss, filed November 19, 2010. (Doc. No. 40). The motion is fully briefed and ready for disposition.

## BACKGROUND

On April 30, 2010, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983, alleging violations of his civil rights. (Doc. No. 1). Named as Defendants, and sued in their individual capacities, were: Matthew Oller (Task Force Officer, Narcotic/Vice); Robert Davis (Sheriff, Montgomery County); Charles Meador (Deputy); Michael S. Goveia (Deputy); Victor Wiser (Deputy); Kelly Broniec (Associate Circuit Judge); Roy Richter (Judge); Keith Sutherland (Judge); Christina McKee (Probation and Parole Officer); and David Wren (Probation and Parole Officer). In an Order entered August 17, 2010, this Court dismissed Defendants Meador, Wiser, Goveia, Sutherland, and Richter, because as to those Defendants Plaintiff's Complaint was legally frivolous and/or failed to state a claim upon which relief can be granted. (Doc. No. 7).

As relevant here, in his Complaint Plaintiff alleges that in June, 2005, Defendant Oller entered Plaintiff's mother's premises, and executed a search of the premises without his mother's permission or probable cause. (Complaint ("Compl."), Doc. No. 1, PP. 11, 12). Plaintiff claims that at the time

of the search he was living on his mother's property in a trailer, which was separate and distinct from the house. (Id., P. 10). Notwithstanding his separate residence, Plaintiff claims he was arrested for possession of narcotics when Defendant Oller found cocaine in his mother's home. (Id., P. 12). Plaintiff further claims that after finding the cocaine, Defendant Oller came to arrest Plaintiff at the trailer, and gave him a shirt to wear that did not belong to him. (Id., P. 10). While being booked at the jail, Plaintiff alleges he was given a second charge for possession of cocaine that was found in the pocket of the shirt he was wearing. (Id.). Plaintiff asserts the cocaine was planted by Defendant Oller, and that Defendant Oller fabricated all the charges against him, as evidenced by the fact that the charges were dismissed almost three years after his arrest.[1] (Id., PP. 11, 13).

Plaintiff alleges that based on his false arrest and Defendant Broniec's malicious prosecution, Defendant McKee believed the State had a legitimate case against Plaintiff. (Compl., P. 25). She therefore issued a "capias warrant" without probable cause or independent investigation, relying solely on misinformation relayed to her by probation officer Shannon Crews. (Id., PP. 25-26). Defendant McKee further recommended revocation of Plaintiff's probation. (Id., P. 27). Plaintiff claims Defendant McKee scheduled a preliminary probation revocation hearing, but then without informing Plaintiff conspired with Defendant Wren to hold the hearing prematurely, in order to deprive Plaintiff of his right to gather witnesses, present exculpatory evidence, and ensure his attorney's presence. (Id., PP. 29-30, 33). Plaintiff asserts that as a result of the alleged probation violation, he was not allowed to post bail on the underlying charges of narcotics possession.[2] (Id.,

---

[1] Plaintiff alleges Defendant Broniec, the prosecuting attorney in 2005, maliciously prosecuted him for three years, knowing he was innocent, until she was replaced by a new prosecuting attorney who dismissed Plaintiff's case. (Compl., PP. 14, 17).

[2] Plaintiff puts forth additional facts and allegations of wrongdoing in his response to Defendant McKee's Motion to Dismiss. To the extent such allegations are not found in his sixty-seven page § 1983 Complaint, the Court will not address them here.

P. 28). He seeks declaratory and injunctive relief[3], together with compensatory and punitive damages. (Id., P. 66).

As stated above, Defendant McKee filed the instant Motion to Dismiss on November 19, 2010. (Doc. No. 40). Among other claims, Defendant McKee asserts she is entitled to absolute quasi-judicial and/or prosecutorial immunity for her actions in deciding to issue a warrant for Plaintiff's arrest and commence probation revocation proceedings.

## STANDARD FOR MOTION TO DISMISS

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint in the light most favorable to Plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008) (citing Luney v. SGS Auto. Servs., Inc., 432 F.3d 866, 867 (8th Cir. 2005)). Additionally, the Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). A motion to dismiss must be granted, however, if the Complaint does not contain, "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). While a Complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

---

[3] "Equitable remedies, such as an injunction, are 'unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again...'" Raney v. Crawford, 2010 WL 1727969 at *1 (E.D. Mo. Apr. 29, 2010) (quoting Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (internal citation omitted)). Upon consideration, the Court finds no claim or showing Plaintiff is still being, or will continue to be, subjected to the alleged unconstitutional acts perpetrated by Defendant McKee. Under these circumstances, Plaintiff's claims for equitable relief must be denied as moot. See Martin, 780 F.2d at 1337 ("Thus, [Plaintiff's] claims for injunctive relief are moot. For the same reason, he does not have standing to seek declaratory relief."). See also Raney, 2010 WL 1727976 at *2; Walker v. Bowersox, 526 F.3d 1186, 1189 (8th Cir. 2008); Junaid v. Kempker, 2009 WL 881311 at *5 (E.D. Mo. Mar. 27, 2009).

obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted); Huang v. Gateway Hotel Holdings, 520 F.Supp.2d 1137, 1140 (E.D. Mo. 2007). Stated differently, to survive a motion to dismiss the Complaint's factual allegations, "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citations omitted).

## **DISCUSSION**

The Supreme Court consistently has held that government officials are entitled to some type of immunity from suits for damages. Two types of immunity defenses generally have been recognized:

> Absolute immunity defeats a suit at the outset, provided that the official's actions are within the scope of the immunity. *Imbler v. Pachtman*, 424 U.S. 409, 419 n. 13, 96 S.Ct. 984, 989 n. 13, 47 L.Ed.2d 128 (1976). Qualified immunity is asserted as a defense, and shields government officials performing discretionary functions from civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

Ray v. Pickett, 734 F.2d 370, 371 (8th Cir. 1984).

In her Motion to Dismiss, Defendant McKee asserts she is entitled to absolute immunity for her actions in issuing a warrant for Plaintiff's arrest and commencing probation revocation proceedings. (Memorandum in Support of Defendant McKee's Motion to Dismiss, PP. 3-7). "Courts take a functional approach when determining whether an official receives qualified or absolute immunity; the level of immunity flows not from rank or title or location within the Government, but from the nature of the [official's] responsibilities." Scotto v. Almenas, 143 F.3d 105, 110 (2d Cir. 1998) (internal quotations and citations omitted). "Absolute immunity from suit has been accorded to judges, prosecutors, legislators, and to federal agency officials who perform

adjudicatory or prosecutorial functions." Ray, 734 F.2d at 371-72 (internal citations omitted). This Court thus must examine the role played by Defendant McKee, to determine whether she performed a function for which absolute immunity is required. Scotto, 143 F.3d at 111. See also Ray, 734 F.2d at 372 (citation omitted) ("[C]ertain adjudicatory or prosecutorial functions of a probation officer may be entitled to absolute immunity, while other functions, more administrative, supervisory, or investigative in nature, may warrant only a qualified immunity.").

### A. Issuing Arrest Warrant

As noted above, Plaintiff first complains Defendant McKee issued a "capias warrant" without probable cause or independent investigation, relying solely on misinformation relayed to her by probation officer Shannon Crews. (Compl., PP. 25-26). In Ray v. Pickett, the Eighth Circuit held that a federal probation officer was not entitled to absolute immunity for her action in filing a report with the United States Parole Commission to secure a parole violator's warrant. Ray, 734 F.2d at 372-374. The Court distinguished its case, however, in which the reporting probation officer had no part in making the decision to initiate a parole revocation proceeding, from one in which an agency official actually decided to initiate administrative proceedings, finding the latter decision was much like a prosecutor's decision to initiate a criminal prosecution. Id. The Eighth Circuit refined its ruling twelve years later in Anton v. Getty, when it held that "probation officers are entitled to absolute immunity when they 'perform discretionary tasks that play an integral part in the decision making process,' such as when they 'evaluate facts, draw legal conclusions, and make recommendations.'" Jensen v. Jorgenson, 2005 WL 2412379 at *8 (D. S.D. Sep. 29, 2005) (quoting Anton, 78 F.3d 393, 396 (8th Cir. 1996)).

Upon consideration, the Court finds Defendant McKee's issuance of a warrant of arrest for Plaintiff's alleged violation of probation, "was not solely an administrative or clerical act, but rather

required exercising judgment and was a quasi-judicial act entitling [McKee] to absolute immunity." Jensen, 2005 WL 2412379 at *9. See also Scotto, 143 F.3d at 112 (citations omitted) ("Parole officers [] receive absolute immunity for their actions in initiating parole revocation proceedings and in presenting the case for revocation to hearing officers, because such acts are prosecutorial in nature."); Wilson v. Kelkhoff, 86 F.3d 1438, 1446 (7th Cir. 1996) (parole officer entitled to absolute immunity for "deciding to issue an arrest warrant based upon evidence gathered by others"). This portion of Defendant McKee's Motion to Dismiss will therefore be granted.

### B. Commencing Probation Revocation Proceedings

As noted above, Plaintiff further complains Defendant McKee scheduled a preliminary probation revocation hearing, but then without informing Plaintiff conspired with Defendant Wren to hold the hearing prematurely, in order to deprive Plaintiff of his right to gather witnesses, present exculpatory evidence, and ensure his attorney's presence. (Compl., PP. 29-30, 33). In Wilson, however, the Seventh Circuit held that, "not only the actual decision to revoke [probation], but also activities that are part and parcel of the decision process justify absolute immunity." Wilson, 86 F.3d at 1444 (internal quotations and citations omitted). The Court continued:

> Thus....the board members are absolutely protected from suit for not providing [plaintiff] sufficient notice of the final revocation hearing. And with respect to the conduct of the hearing itself, the board members merit absolute immunity for their failure to provide [plaintiff] an opportunity to present evidence and witnesses.

Id. at 1445 (footnote omitted).

Upon consideration, this Court agrees with the reasoning in Wilson. The Court thus holds that, to the extent Defendant McKee was responsible for any alleged failures in the notice provided

or conduct of the revocation hearing itself, she is entitled to absolute immunity for her actions. This portion of Defendant McKee's Motion to Dismiss must therefore be granted as well.[4]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Christina McKee's Motion to Dismiss (Doc. No. 40) is **GRANTED**, and Plaintiff's claims against Defendant McKee are **DISMISSED** with prejudice.

Dated this 9th day of March, 2011.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[4] In light of the Court's above ruling, it need not consider Defendant McKee's assertion she is entitled to qualified immunity for her actions.