UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| JAY ABBOTT, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 2:10CV32 JCH |
| ) | |
| MATTHEW OLLER, et al., ) | |
| ) | |
| Defendant(s). ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Matthew Oller, Robert Davis, and Kelly Broniec's Motion for Summary Judgment, filed October 3, 2011. (ECF No. 133). The motion is fully briefed and ready for disposition.

## BACKGROUND

From 2002 to 2006, Defendant Matthew Oller ("Oller") was employed as a Task Force Officer with the East Central Missouri Drug Task Force. (Defendants Matthew Oller, Robert Davis, and Kelly Broniec's Statement of Uncontroverted Material Facts in Support of their Motion for Summary Judgment ("Defendants' Facts"), ¶ 1).[1] On June 6, 2005, Oller met with a confidential informant at the Montgomery County Sheriff's Department, who provided Oller with information that he/she had been involved in illegal narcotics activity with Plaintiff Jay Abbott ("Abbott") in the recent past, that Abbott often purchased and used cocaine, and that Abbott often kept cocaine in a glass measuring cup. (Id., ¶ 2).[2] The confidential informant previously had provided Oller with reliable

---

[1] The Court has omitted the citations to the evidence on record contained in Defendants' Facts.

[2] In his response to this and numerous others of Defendants' Facts, Abbott fails to cite to the specific portions of the record upon which he relies to support his claims the matters at issue

and trustworthy information regarding illegal narcotics activity, that resulted in the arrest and successful prosecution of felony narcotics offenders. (Id., ¶ 5).

While Oller was at the Montgomery County Sheriff's Department on June 6, 2005, he received a call from Montgomery County Deputy Sheriff Charles Meador ("Meador"), requesting Oller's assistance at Abbott's residence, located at 127 Missouri Route TT in Montgomery County, Missouri (the "Property").³ (Defendants' Facts, ¶¶ 3, 7). Upon arriving at the Property, Oller met with Meador and a woman who identified herself as Kay McDonald ("McDonald"). (Id., ¶ 9). McDonald informed Oller that she was Abbott's sister, and a joint owner of the Property and the house located on the Property. (Id., ¶¶ 10, 65).⁴ McDonald further informed Oller that when she arrived at the Property unannounced, Abbott was behaving strangely, and that when she went into the house she saw one male and one female come out of the bathroom and leave in a hurry. (Id., ¶¶ 11-14, 54, 56). McDonald told Oller she was aware Abbott had had problems with drugs in the past,

---

are disputed. Furthermore, the Court's review of Abbott's response reveals it is rife with speculation, conjecture and legal conclusions. In order to defeat a motion for summary judgment, "[a] plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." Davidson & Assoc. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005) (citation omitted). See also Sportsman v. BNSF Railway Co., 2011 WL 2134373 at *5 (E.D. Mo. May 26, 2011) (citation omitted) ("In deciding a motion for summary judgment, the Court may consider only admissible evidence, and must disregard portions of declarations that were made without personal knowledge, consist of hearsay, or purport to state legal conclusions of fact."). The Court thus will not consider these portions of Abbott's response to Defendants' Facts.

³ While Abbott admits that he resided at the Property, he contends the Property consisted of a 240 acre farm with three separate dwellings. (Abbott's Objection to Defendant's Uncontroverted Material Facts ("Abbott's Response to Defendants' Facts"), P. 12).

⁴ Abbott denies McDonald was a joint owner, instead insisting that his mother was the sole owner of the Property and house thereon. (Abbott's Response to Defendants' Facts, P. 4). Abbott offers absolutely no evidence, however, to contradict Oller's claim that McDonald represented she was an owner. Furthermore, the General Warranty Deed attached to Abbott's Complaint supports McDonald's claim, as it shows Abbott's mother, Edna R. Abbott, conveyed the Property to, among others, Abbott and Kay Schmidt (now known as Kay McDonald), as joint tenants with right of survivorship on September 22, 1981. (See ECF No. 1-13).

and that due to his behavior that day and the presence of two unknown individuals in the house, she thought that he might be using drugs again. (Id., ¶¶ 15, 55, 57, 62).[5]

McDonald then requested that Oller, Meador, and Trooper Bickell[6] search the Property and house for illegal activity. (Defendants' Facts, ¶¶ 17, 63). Oller informed McDonald they could only search the Property and house if she, as a joint owner, had access to all areas to be searched and consented to the search. (Id., ¶ 18). McDonald responded that she had compete access to the entire Property, including the house, and to any items located on the Property or in the house. (Id., ¶ 19). McDonald then reiterated her consent to the search. (Id., ¶¶ 20, 65, 66).

During the search of the residence, Oller located and seized a glass measuring cup containing a white powder, that was located in a desk in an open common area of the house. (Defendants' Facts, ¶ 21). The white powder eventually tested positive for the presence of cocaine. (Id., ¶ 22). McDonald informed Oller that Abbott slept on a couch in the open common area where the desk was located. (Id., ¶ 23).[7] During the search, Oller further located and seized two rifles, a Tylenol pill container with numerous marijuana seeds inside, and a metal crack cocaine pipe, all located in the same area as the desk with the measuring cup. (Id., ¶ 24).[8]

On June 7, 2005, Oller returned to the Property. (Defendants' Facts, ¶ 25). Oller was

---

[5] While Abbott disputes Oller's and McDonald's claims, he admits that he left the Property upon McDonald's arrival, and thus has no independent knowledge regarding whether or not she made the statements. (See Defendants' Facts, ¶¶ 52-53).

[6] Trooper D.A. Bickell with the Missouri State Highway Patrol had since arrived at the Property. (Defendants' Facts, ¶ 16).

[7] Abbott disputes the accuracy of McDonald's statement, instead claiming that one John Cardwell slept on the couch at issue. (Abbott's Response to Defendants' Facts, P. 6). Abbott does not dispute Oller's suggestion that McDonald made the statement, however.

[8] Again, Abbott does not dispute the fact of the seizure, but only that the items at issue belonged to him. (Abbott's Response to Defendants' Facts, PP. 6-7).

accompanied by East Central Missouri Drug Task Officer Shayne Healea ("Healea").  (Id., ¶ 26). Upon their arrival, Abbott was standing in a doorway of the house that lead to the open common area where the cocaine and other items were seized the previous day.  (Id., ¶¶ 27-28).  When Oller informed Abbott that he was there to talk about the seized cocaine, Abbott responded that it was "from a party he had."  (Id., ¶ 29).[9]

Oller asserts that based on the reliable confidential informant's statements regarding Abbott's past narcotics activity and propensity to keep cocaine in a glass measuring cup, the fact that cocaine was in fact found in a glass measuring cup in the residence, and McDonald's statement that Abbott had access to the area where the cocaine was found, he "believed that there were sufficient facts for a reasonable person to believe that Jay Abbott had committed the offense of being in possession of the cocaine that was seized at the house on June 6, 2005 in violation of § 195.202 RSMo." (Defendants' Facts, ¶ 30).  Oller and Healea therefore transported Abbott to the Montgomery County Jail, and released him to the custody of the jail staff for booking.  (Id., ¶ 31).  Oller and Healea then left the booking area.  (Id., ¶ 32).

Oller subsequently was notified by Montgomery County Deputy Paul Long that during the booking process, Abbott was found to be in possession of a small bag of white powder.[10] (Defendants' Facts, ¶ 33).  Oller therefore returned to the booking area of the Montgomery County Jail, and seized possession of the small bag of white powder, which eventually tested positive for the presence of cocaine.  (Id., ¶¶ 34-35).  Again, based on these circumstances Oller claims he "believed

---

[9] In his response, Abbott "objects to the rephrasing of his words in order to prejudice." (Abbott's Response to Defendants' Facts, P. 8).  Abbott does not indicate the true nature of his remark, however.

[10] Abbott claims the cocaine was not his, as Oller gave him the shirt containing the cocaine at the time he transported him from the Property to the jail. (Abbott's Response to Defendants' Facts, PP. 11-12).

that there were sufficient facts to believe that Jay Abbott had committed the criminal offense of being in the possession of a controlled substance in a jail facility in violation of § 217.360 RSMo." (Id., ¶ 36).

After Abbott was arrested and incarcerated at the Montgomery County Jail for the possession of a controlled substance, Defendant Kelly Broniec[11] ("Broniec") reviewed the probable cause statements regarding the discovery of cocaine and other items at the Property, and the subsequent discovery of cocaine in the pocket of the shirt being worn by Abbott during booking, in order to determine whether she should initiate formal criminal charges against Abbott. (Defendants' Facts, ¶ 94). Broniec had absolute discretion in deciding whether or not to file criminal charges against Abbott, and whether to request an arrest warrant on those charges. (Id., ¶ 96). Broniec eventually determined that criminal charges should be initiated against Abbott for the possession of a controlled substance, in violation of § 195.202 RSMo., and the possession of a controlled substance in a jail facility, in violation of § 217.360 RSMo., both class C felonies. (Id., ¶ 97). Broniec prepared a felony complaint in order to formally initiate the criminal charges, and requested that the court issue an arrest warrant for Abbott on those charges. (Id., ¶ 98). Broniec subsequently attended several court proceedings in connection with the criminal charges against Abbott, and had absolute discretion in developing and implementing the litigation strategy she utilized during her pursuit of the criminal charges. (Id., ¶¶ 99-100).

At all relevant times, Defendant Robert Davis ("Davis") was the Sheriff of Montgomery County, Missouri. (Defendants' Facts, ¶ 102). Davis did not request that Oller, Meador, Bickell, or Healea go to the Property on the dates in question, nor was he involved in their decisions to go there.

---

[11] From 1999 to 2006, Kelly Broniec was the Prosecuting Attorney for Montgomery County, Missouri. (Defendants' Facts, ¶ 71). Broniec currently is an Associate Circuit Judge of the Montgomery County Circuit Court. (Id., ¶ 70).

(Id., ¶¶ 103-104, 107-108, 113-114). Davis was not physically present at the Property or house on those dates, and thus did not participate in the search, seizure, or arrest that took place. (Id., ¶¶ 105, 110-111, 115, 117-118). Davis was present for neither the transportation of Abbott from the Property to the Montgomery County Jail, nor his booking into the Jail. (Id., ¶¶ 119-120). Furthermore, Davis did not request that formal criminal charges be initiated against Abbott, nor was he involved in the initiation of charges or the setting of bail. (Id., ¶¶ 121-123). In fact, Davis was not directly involved in the prosecution of Abbott in any way. (Id., ¶ 124).

The Montgomery County Jail has a Jail Administrator, appointed by Davis to administer and manage the day-to-day operations of the Jail. (Defendants' Facts, ¶ 125). The Jail Administrator makes the necessary day-to-day decisions regarding the security of the Jail and safety of the jailers and inmates at the facility, including decisions regarding inmate housing assignments. (Id., ¶¶ 126-127). Davis as Sheriff was not involved in Abbott's cell placement[12], nor was he involved in or aware of any decisions regarding the conditions to which Abbott allegedly was subjected, including his receipt of smaller food portions, denial of access to his attorney, and denial of access to the law library. (Id., ¶¶ 129, 136-143).

On April 30, 2010, Abbott filed a Complaint pursuant to 42 U.S.C. § 1983, alleging violations of his civil rights. (ECF No. 1). Originally named as Defendants, and sued in their individual capacities, were: Oller; Davis; Meador; Michael S. Goveia (Deputy); Victor Wiser (Deputy); Broniec; Roy Richter (Judge); Keith Sutherland (Judge); Christina McKee (Probation and Parole Officer); and David Wren (Probation and Parole Officer). In an Order entered August 17, 2010, this

---

[12] Davis was not involved in any decision regarding the cell in which Abbott was placed during his incarceration, nor was he even aware of the particular cell. (Defendants' Facts, ¶¶ 129-131). Davis further was not involved in or aware of any decision to place Abbott in administrative segregation. (Id., ¶¶ 132-135).

Court dismissed Defendants Meador, Wiser, Goveia, Sutherland, and Richter, because as to those Defendants Abbott's Complaint was legally frivolous and/or failed to state a claim upon which relief can be granted. (ECF No. 7). Furthermore, in Orders entered March 9, and March 29, 2011, the Court dismissed Defendants McKee and Wren, holding those Defendants were immune from suit. (ECF Nos. 78, 88).

As relevant here, in his Complaint Abbott alleges that Oller's June 6, 2005, warrantless search of the premises and subsequent arrest of Abbott were undertaken without permission[13], probable cause or exigent circumstances. (Complaint ("Compl."), ECF No. 1, PP. 9, 11, 12). Abbott further claims that after his arrest on June 7, 2005, for possession of narcotics, Oller gave Abbott a shirt to wear that did not belong to him, and that eventually was found to have cocaine in the pocket. (Id., P. 10). Abbott thus asserts the cocaine was planted by Oller, and that Oller fabricated all the charges against him, as evidenced by the fact that the charges were dismissed almost three years after his arrest.[14] (Id., PP. 11-13).[15]

With respect to Defendant Broniec, Abbott alleges she failed to perform her duties with

---

[13] As noted above, Abbott claims only his mother, as sole owner of the Property, had authority to grant consent to the search.

[14] According to Defendants, the charges against Abbott were dismissed for a violation of Abbott's right to a speedy trial that occurred after Broniec left the Montgomery County Prosecuting Attorney's Office in 2006. (Defendants' Memorandum of Law in Support of their Motion for Summary Judgment ("Defendants' Memo in Support"), P. 11 n. 3).

[15] In his Complaint, Abbott also alleges Oller unlawfully changed the amount of bail set for Abbott, from $10,000 to $100,000. (Compl., PP. 16-17). With his Motion for Summary Judgment, however, Oller provides sworn testimony that he did not change the bond amount, was not personally involved in any decisions or acts related to setting the amount of Abbott's bond, and never communicated with either Judge in Abbott's case regarding the amount of bond. (Defendants' Facts, ¶¶ 37-40). During his deposition Abbott admitted he did not actually see Oller change the bond amount on Abbott's arrest warrant. (Abbott Dep., PP. 201-205). Under these circumstances, the Court finds Abbott fails to present a genuine issue of material fact with respect to whether Oller changed the bond amount, and this portion of Defendants' Motion for Summary Judgment must be granted.

reasonable objectivity, instead relying solely on Oller's allegedly fabricated information to initiate criminal charges against Abbott. (Compl., PP. 11, 14). Abbott further alleges Broniec maliciously prosecuted him for three years, knowing he was innocent, until she was replaced by a new prosecuting attorney who dismissed Plaintiff's case. (Id., PP. 14, 16-17).

Finally, with respect to Defendant Davis, Abbott alleges he violated Abbott's constitutional rights by failing to ensure, "a constitutional living environment, exercise, recreation, adequate nutricious (sic) meals, acess (sic) to a law library, [and] legal materials." (Compl., P. 22). Abbott further alleges Davis was aware that while Abbott was confined in administrative segregation, he was subjected to "gross unsanitary conditions," and denied access to his attorney of record. (Id., P. 23).[16]

As stated above, Defendants Oller, Broniec and Davis filed the instant Motion for Summary Judgment on October 3, 2011, asserting they are entitled to judgment as a matter of law on all of Abbott's claims. (ECF No. 133).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

---

[16] To the extent Abbott claims Davis was responsible due to his hiring of Oller (Compl., PP. 19-20), the undisputed evidence demonstrates neither Davis nor the Montgomery County Sheriff's Department ever employed Oller. (Defendants' Facts, ¶¶ 144-147).

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

### I. Defendant Oller

#### A. Search Of The Property

As the Court construes Abbott's Complaint, he first asserts Oller violated his constitutional rights by searching the Property and home thereon without a warrant, probable cause, or consent. In his Motion for Summary Judgment, Oller asserts this claim is barred by qualified immunity because (1) the search did not violate Abbott's constitutional rights in the first instance; and (2) even if it did, it was not clearly established that the search would violate his constitutional rights. (Defendants' Memo in Support, PP. 13-19).

"Government officials are entitled to qualified immunity from suit under 42 U.S.C. § 1983 if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Johnson v. Board of Police Com'rs, 2007 WL 1629909 at *1 (E.D. Mo. Jun. 4, 2007) (internal quotations and citations omitted). The Court employs a two-

part inquiry "to determine whether a lawsuit against a public official alleging a constitutional violation can proceed in the face of an assertion of qualified immunity." Serna v. Goodno, 567 F.3d 944, 951 (8th Cir.) (citing Saucier v. Katz, 533 U.S. 194, 200-01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)), cert. denied, 130 S.Ct. 465 (2009).

> First, courts [] consider whether, taken in the light most favorable to the party asserting the injury,....the facts alleged show the officer's conduct violated a constitutional right.....Second, courts [] ask whether the right was clearly established[17]...

Serna, 567 F.3d at 951-52 (internal quotations and citations omitted). "Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity." Krout v. Goemmer, 583 F.3d 557, 564 (8th Cir. 2009).

With this claim, Abbott implicates his rights under the Fourth Amendment. "The Fourth Amendment guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...'" United States v. Hinkle, 456 F.3d 836, 840 (8th Cir. 2006) (quoting U.S. Const. amend. IV). "A search conducted pursuant to the consent of a person with the authority to grant consent may be undertaken by government actors without a warrant or probable cause, and any evidence discovered through that search may be used at trial unless it is otherwise inadmissible." Id. (citing United States v. Matlock, 415 U.S. 164, 170, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974)). See also King v. Fletcher, 319 F.3d 345, 348 (8th Cir. 2003) (citation omitted) ("[T]he Fourth Amendment protection against unreasonable searches does not apply if the property owner voluntarily consents to the search."). Furthermore, "[a] third party with 'common authority' over a property, or a third party that a government agent reasonably believes has 'common

---

[17] While Saucier set forth the two-part test with a mandatory sequence for analysis, the Supreme Court recently reversed itself and eliminated the mandatory aspect of the sequential analysis. Serna, 567 F.3d at 952 (citing Pearson v. Callahan, --- U.S. ----, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009)).

authority' over a property, may voluntarily consent to a search." Hinkle, 456 F.3d at 840 (citations omitted).

Upon consideration, the Court finds Oller is entitled to qualified immunity on this portion of Abbott's Fourth Amendment claim, either because his actions in searching the Property and house did not violate Abbott's constitutional rights, or because a reasonable official in Oller's position would not have understood he was violating Abbott's rights.

With respect to whether the right was violated in the first instance, it is undisputed that upon Oller's arrival McDonald informed him she was Abbott's sister, and a joint owner of the Property and house located on the Property. The evidence on record, including the General Warranty Deed attached to Abbott's Complaint, supports McDonald's claim of ownership.[18] McDonald, as co-owner, requested that Oller and his fellow officers search the Property and house for illegal activity. Upon further questioning from Oller, McDonald stated that she had compete access to the entire Property, including the house and all items located therein or on the Property, and then repeated her consent to the search.[19] Under these circumstances, the Court finds Oller's search of the Property did not violate Abbott's constitutional rights, as the consent of a co-owner obviated the need for a warrant or probable cause.

In the alternative, assuming Oller's search of the Property did violate Abbott's constitutional rights, the Court finds such right was not clearly established under the circumstances presented. "For a right to be deemed clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Serna, 567 F.3d at

---

[18] Abbott offers no proof in support of his contention that his mother was the sole owner of the Property and house thereon.

[19] McDonald testified that Oller was concerned about making sure he had permission from an owner of the house before conducting the search. (Defendants' Facts, ¶ 64).

952 (internal quotations and citations omitted). "In other words, officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Id. (internal quotations and citation omitted). As noted above, case law establishes that a law enforcement officer may search a property without probable cause or a warrant if the owner consents. Thus, even assuming McDonald was not a co-owner of the Property, capable of granting consent to the search, a reasonable officer in Oller's position would not have understood that he was violating Abbott's constitutional rights by relying on McDonald's purported ownership interest in conducting the warrantless search. This portion of Defendants' Motion for Summary Judgment must therefore be granted.

### B. Arrest Of Abbott

Abbott next claims Oller violated his constitutional rights by arresting him without an arrest warrant[20], and without probable cause. Under Eighth Circuit law, "[p]robable cause exists where the facts and circumstances within...the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." Baribeau v. City of Minneapolis, 596 F.3d 465, 474 (8th Cir. 2010) (internal quotations and citation omitted). "'Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.'" Id. (quoting Devenpeck v. Alford, 543 U.S. 146, 152, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004)). As the name implies, "probable cause requires only a probability or substantial chance of criminal activity, rather than an actual showing of criminal activity." United States v. Webster, 625 F.3d 439, 442 (8th Cir. 2010) (internal quotations and citations omitted).

---

[20] It is undisputed that Oller did not have a warrant for Abbott's arrest when he returned to the Property on June 7, 2005.

Upon review of the record, the Court finds the undisputed facts demonstrate Oller had probable cause to arrest Abbott on June 7, 2005. For example, Oller arrived at the Property on June 6 armed with information from a reliable confidential informant that Abbott had been involved in illegal narcotics activity in the recent past, that Abbott often purchased and used cocaine, and that Abbott often kept cocaine in a glass measuring cup.[21] During his search of the residence, Oller located and seized a glass measuring cup containing a white powder later determined to contain cocaine, and McDonald informed Oller that Abbott slept on a couch in the area where the measuring cup was found. Oller further located and seized two rifles, a Tylenol pill container with numerous marijuana seeds inside, and a metal crack cocaine pipe, all located in the same area as the measuring cup. Finally, when Oller arrived at the Property on June 7 he found Abbott standing in a doorway that lead to the area where the cocaine was found, thus demonstrating Abbott had access to the area at issue.

Based on the foregoing, the Court finds Oller possessed sufficient facts to believe Abbott had committed the offense of being in possession of the cocaine that was seized at the house on June 6, 2005, in violation of § 195.202 RSMo. See United States v. Marchena-Borjas, 209 F.3d 698, 700 (8th Cir. 2000) (citations omitted) ("The historical reliability of the confidential informant, his provision of descriptive information not easily discoverable, and the independent corroboration of his information by investigating officers together established probable cause for [Defendant's] arrest."). This portion of Defendants' Motion for Summary Judgment will therefore be granted.[22]

---

[21] "Hearsay information provided by a confidential informant may supply probable cause for a valid, warrantless arrest..." United States v. Koessel, 706 F.2d 271, 274 (8th Cir. 1983) (citations omitted). See also United States v. Neal, 528 F.3d 1069, 1073-74 (8th Cir. 2008).

[22] As with the warrantless search, the Court further finds that even if Oller was mistaken in his belief that he had probable cause to effect Abbott's arrest, a reasonable law enforcement officer in his position would not have understood that arresting Abbott under those circumstances

### C. **Planting Of Evidence**

In his final claim against Oller, Abbott asserts Oller violated his constitutional rights by planting a bag of cocaine in the shirt he gave Abbott to wear at the time of his arrest. (Abbott's Response to Defendants' Facts, PP. 11-12). During his deposition, however, Abbott offered several theories as to how the bag turned up in the shirt he was wearing, only one of which involved Oller. (Abbott Dep., PP. 142-147). By way of contrast, with his Motion for Summary Judgment Oller provides sworn testimony that he did not place the small bag of white powder in the pocket of the shirt being worn by Abbott when he was booked into the Montgomery County Jail, nor was he involved with any decisions or acts to place the bag there. (Defendants' Facts, ¶¶ 41-42). Under these circumstances, the Court finds Abbott's speculation fails to present a genuine issue of material fact with respect to whether Oller planted the cocaine, and this portion of Defendants' Motion for Summary Judgment must be granted.

### II. **Defendant Broniec**

As noted above, Abbott alleges Broniec violated his constitutional rights by failing to perform her duties with reasonable objectivity, instead relying solely on Oller's allegedly fabricated information to initiate criminal charges against Abbott. (Compl., PP. 11, 14). Abbott further alleges Broniec maliciously prosecuted him for three years, knowing he was innocent, until she was replaced by a new prosecuting attorney who dismissed Plaintiff's case. (Id., PP. 14, 16-17). In her Motion for Summary Judgment, Broniec asserts she is entitled to absolute immunity for her actions in initiating and prosecuting criminal charges against Abbott. (Defendants' Memo in Support, PP. 24-29).

The Supreme Court consistently has held that government officials are entitled to some type

---

violated his rights.

of immunity from suits for damages. "Absolute immunity defeats a suit at the outset, provided that the official's actions are within the scope of the immunity." Ray v. Pickett, 734 F.2d 370, 371 (8th Cir. 1984) (citing Imbler v. Pachtman, 424 U.S. 409, 419 n. 13, 96 S.Ct. 984, 989 n. 13, 47 L.Ed.2d 128 (1976)). "Absolute immunity from suit has been accorded to judges, prosecutors, legislators, and to federal agency officials who perform adjudicatory or prosecutorial functions." Ray, 734 F.2d at 371-72 (internal citations omitted).

"Prosecutors are entitled to absolute immunity from civil liability under § 1983 when they are engaged in prosecutorial functions that are 'intimately associated with the judicial process.'" Schenk v. Chavis, 461 F.3d 1043, 1046 (8th Cir. 2006) (quoting Anderson v. Larson, 327 F.3d 762, 768 (8th Cir. 2003)). Prosecutorial functions include, "the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process." Brodnicki v. City of Omaha, 75 F.3d 1261, 1266 (8th Cir.) (citations omitted), cert. denied, 519 U.S. 867 (1996). See also Schenk, 461 F.3d at 1046 (holding the preparation, signing and filing of a criminal complaint are prosecutorial functions protected by absolute immunity). Absolute immunity does not protect some acts that are purely investigative in nature, however, or do not relate to the initiation or pursuit of a criminal prosecution. Williams v. Hartje, 827 F.2d 1203, 1209 (8th Cir. 1987). This Court thus must examine the role played by Broniec, to determine whether she performed functions for which absolute immunity is required. Scotto v. Almenas, 143 F.3d 105, 111 (2d Cir. 1998).

As noted above, Abbott first complains Broniec decided to file charges against him without conducting an independent investigation, relying solely on misinformation relayed to her through Oller's report, and further included inaccurate information in the criminal complaint she filed seeking criminal charges against him. It is undisputed Broniec reviewed the probable cause statements

- 15 -

regarding the discovery of cocaine and other items at the Property, and the subsequent discovery of cocaine in the pocket of the shirt being worn by Abbott during booking, in order to determine whether she should initiate formal criminal charges against Abbott. It further is undisputed that Broniec had absolute discretion in deciding whether or not to file criminal charges against Abbott, and whether to request an arrest warrant on those charges, and that she utilized that discretion in determining that criminal charges should be initiated against Abbott for the possession of a controlled substance, in violation of § 195.202 RSMo., and the possession of a controlled substance in a jail facility, in violation of § 217.360 RSMo., both class C felonies. Broniec then prepared a felony complaint in order to formally initiate the criminal charges, and requested that the court issue an arrest warrant for Abbott on those charges, which the court subsequently did. Upon consideration, the Court finds these alleged acts go to the heart of a prosecutor's functions in initiating and pursuing criminal charges, and clearly are protected by absolute immunity.[23]

Abbott next complains Broniec maliciously prosecuted him for three years, knowing he was innocent. (Compl., PP. 14, 16-17). As noted above, Broniec's actions consisted of attending several court proceedings in connection with the criminal charges against Abbott, and utilizing her discretion in developing and implementing litigation strategy during her pursuit of the criminal charges. The Court finds these actions represent conduct intimately associated with the judicial process, and thus are entitled to absolute immunity. Brodnicki, 75 F.3d at 1266. This portion of Defendants' Motion

---

[23] Broniec is protected even if, as alleged by Abbott, she acted maliciously in initiating the charges. See Williams, 827 F.2d at 1209 (holding a prosecutor's decision to file criminal charges is protected by absolute immunity, "even if the prosecutor makes that decision in a consciously malicious manner, or vindictively, or without adequate investigation, or in excess of his jurisdiction.").

for Summary Judgment must therefore be granted.[24]

### III.  Defendant Davis

As noted above, Abbott alleges Davis violated Abbott's constitutional rights by failing to ensure, "a constitutional living environment, exercise, recreation, adequate nutricious (sic) meals, acess (sic) to a law library, [and] legal materials." (Compl., P. 22).  Abbott further alleges Davis was aware that while Abbott was confined in administrative segregation, he was subjected to "gross unsanitary conditions," and denied access to his attorney of record.  (Id., P. 23).

In his response to Defendants' Facts, however, Abbott admits Davis was involved in neither Abbott's cell placement, and nor any decisions regarding the conditions to which Abbott allegedly was subjected, including his receipt of smaller food portions, denial of access to his attorney, and denial of access to the law library.  It thus appears Abbott is attempting to assign liability to Davis based solely on the fact that he supervised Oller and the Montgomery County Jail Administrator.

Under Eighth Circuit law, it is well settled that the doctrine of respondeat superior is inapplicable to § 1983 claims.  Vaughn v. Greene County, Ark., 438 F.3d 845, 851 (8th Cir. 2006).  Rather, "[f]or a plaintiff to succeed on a § 1983 claim, he must demonstrate that the defendant was personally involved in the constitutional deprivation or had actual knowledge of the injury."  Carter v. Blake, 2006 WL 568347 at *2 (E.D.Mo. Mar. 7, 2006) (citation omitted).  "A general responsibility for supervising the operations of a correctional facility is insufficient to establish the personal involvement required to support liability."  Coffman v. Blake, 2006 WL 2594774 at *2 (E.D. Mo. Aug. 11, 2006) (citation omitted).

---

[24] To the extent Abbott presents state law claims against Broniec, they too are barred by absolute and/or official immunity.  See, e.g., Reasonover v. St. Louis County, Mo., 447 F.3d 569, 585 (8th Cir. 2006); Richardson v. Sherwood, 337 S.W.3d 58 (Mo. App. 2011); Carden v. George, 291 S.W.3d 852 (Mo. App. 2009).

Upon consideration, the Court finds it is undisputed that Davis did not participate in any allegedly unlawful treatment, nor was he aware of any such treatment. Abbott's speculation as to Davis' alleged knowledge is insufficient to state a claim under § 1983, and so this portion of Defendants' Motion for Summary Judgment must be granted.

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Matthew Oller, Robert Davis, and Kelly Broniec's Motion for Summary Judgment (ECF No. 133) is **GRANTED**, and Abbott's claims against Defendants Oller, Davis and Broniec are **DISMISSED** with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

Dated this  27th  day of April, 2012.

        /s/Jean C. Hamilton  
        UNITED STATES DISTRICT JUDGE